### JAMES H. REED v. HENRY B. FIDDEMAN ET AL.

Written notices of the time of holding an inquisition upon lands under execution process must be given to the defendant, and if the notice contains an error as to the time appointed for holding it, correct information given him the same day by the sheriff, verbally of the proper time of holding it, will not constitute a sufficient notice, and the sale will be set aside.

Rule to show cause wherefore an inquisition and sale of lands should not be set aside on judgments and executions levied upon the lands of James H. Reed at the suit of Henry B. Fiddeman and others. The affidavit of the plaintiff in the rule on which it was granted, alleged that ten days written notice had not been served upon him prior to the holding of the inquisition, and that he had no knowledge of the holding of it until after the last term of this court to which it was returned.

The proof was that it was held on the 24th day of September, 1861, prior to the last term of the court, and that the sheriff served written notice on the defendant in the execution by leaving such a notice at his house at least ten days before that time, which was the time that had been appointed and designated by him for holding the

inquisition in the case. But upon the production of the written notice so left by him, it appeared that he had erroneously inserted the 24th day of October instead of September in it, so that as it read, it was written notice that the inquisition would be held on the 24th of October, instead of on the 24th of September, 1861; and that would have made the holding of it two days after the adjournment of the court at the last term. It was further proved, however, that on the same day on which he left the notice at the defendant's residence, he met the latter in the town of Milford and informed him that he had left a written notice at his house that day for him, of the time of holding the inquisition upon his lands and then also expressly informed him that it would be held on the 24th of September, but not that there was any error in the written notice so left, for he was not aware until it had been produced in court by the defendant, that there was any error in it, and that the defendant then inquired if he should produce his receipts, and when he informed him that he should, he replied that he would be on hand with them at that time.

*Moore*, for the plaintiff: The notice and information given to the defendant in the execution of the time of holding the inquisition, was not sufficient under the statute, which expressly requires a written notice of ten days at least, of the time, and, of course, a correct notice of the time, of holding the inquisition; and no subsequent information, such as had been given in this case, could rectify the error, or supply the place of a proper and sufficient written notice.

*Cullen*, for the defendants: The notice in writing, though inaccurate as to the time designated for holding the inquisition, with the information afterward given in person by the sheriff to the defendant, was sufficient notice at least, to put him on the inquiry, and the very discrepancy in them should and would have prompted any

52

one, except perhaps a party who did not want notice of it in any way, to inquire and ascertain the true and correct time of holding it. But it was evident that he had knowledge and correct knowledge too, of the day on which it was to be held, and knew that that day was the 24th of September, and not the 24th of October as he now feigns and pretends. After all the knowledge which he had in regard to it, the fact that he made no further inquiry of the sheriff about it, never informed him of the discrepancy between the written and the verbal notice given by him, and never came to court at the last term to learn anything about it, but allowed it to pass without any notice, or seeming to have the slightest information or knowledge concerning it, looked too much like an artful design to take advantage of a mere clerical error in a matter of dates, which he knew all the while better than anybody else, was an error and that September was intended in lieu of October in the written notice then in his pocket, and too much like a mere subterfuge to evade the real design and object of the notice, whilst seeking fraudulently to take advantage of the mere letter of it, to commend his case very strongly, he would say, to the favorable consideration of the court. He knew, or at least, had good reason to know, and ought to have known that the inquisition on his land was held before and had been returned at the last term of the court, and should therefore have made his application to set aside the sale at that term, and he should consequently contend that it was now too late after the lapse of a term to make it.

*Moore:* There was no proof that the defendant had any other notice such as the law requires, than that which was left at his house, and he was justified in regarding that as the only notice or proper information he had received of the inquisition which was to be held, and he was not bound to put himself to any trouble or expense whatever, to ascertain whether it was correct or incorrect in that, or in any other respect. On the contrary, he had a per-

fect legal right and was bound to assume and act upon it, not only as the correct, but as the only proper notice he had received of it. Besides, there was no evidence that he had any knowledge in point of fact that the inquisition had been held until after its return to and the adjournment of the last term of the court. It was therefore not too late to make the application to set aside the inquisition and sale at the present term.

*By the Court*: The rule in the case must be made absolute. Ten days written notice of the inquisition and of the time for holding it, is the only legal notice that can be given in any case; for that and nothing short of it, the statute in express terms requires. A written notice which by a mistake, notifies a party that a thing is to be done thirty days after it is in point of fact to be done, if not practically no more, would in most cases at least, be no better, than no notice at all; and if the written notice to be given under the statute, is erroneous in any essential respect, it cannot be remedied or corrected, even by design, in any such method as has been insisted was unintentionally done in the present case. Admitting what has been proved, on discovering the discrepancy as to the time designated between the written notice left at the house of the defendant in the writ and the verbal information afterward given him on the same day by the sheriff, which of the two would the defendant have a right naturally and reasonably to consider and conclude was the most correct and reliable notice he had received? The former we should say without hesitation. But even if he had any doubt or misgiving in his own mind upon the subject, he was under no obligation to hunt up the sheriff or to put himself to any trouble whatever to ascertain on which of the two days the inquisition was in fact to be held. We must therefore consider the erroneous written notice and the conflicting verbal information afterward given him by the sheriff proved in the case, as equivalent to no legal notice whatever in the case; and as it all occurred

but a few days before the commencement of the last term of the court, and the plaintiff in the rule alleges in his affidavit that he had no knowledge of the fact that the inquisition had been held, or his lands had been condemned until after the adjournment at that term, both the inquisition and the sale must be set aside and the rule made absolute.